GEORGE MATSON, administrator of BETTY MATSON, late BETTY WALTERS, now deceased, a legatee under the last will and testament of WILLIAM WALTERS, deceased,

*vs.*

WILLIAM WALTERS AND JOHN PALMER, executors of WILLIAM WALTERS, deceased.

*New Castle, March T.* 1821.

Bequest to the testator's daughter, " during her natural life," of " *the yearly interest*" on one half the proceeds of certain land directed by the will to be sold.   The premises were sold on the 25th March, 1808. Interest on one half the purchase money was paid to the legatee regularly up to 25th March, 1817.   She died, 23d December, 1817.   *Held*, that her administrator was entitled to interest up to the day of her death.

CASE STATED IN EQUITY—APPORTIONMENT OF INTEREST.— This was a case stated in equity, by consent of parties, in lieu of a bill and answer.   The case stated was as follows, viz :

" William Walters, the testator, by his last will and

testament, dated the 31st day of the 3rd month, 1807, among other things, devised in the words following to wit : "Item, I order the tavern house and land where my " son-in-law, George Matson, now dwells, to be sold to the " highest bidder as soon as convenient after my decease, " hereby empowering either of my executors to execute a " full and clear deed of conveyance for the same ; and one " half of the purchase money arising from such sale, I " give to my daughter, Beulah Palmer, and the yearly " interest of the other half I give to my daughter Betty " Matson *during her natural life*," as by the same will may appear ; and the testator appointed the said William Walters and John Palmer executors thereof. The tavern, house and land mentioned in the devise were sold by the said executors to Samuel Pennell for the sum of $2,515, on the 25th of March, 1808. And the said William Walters, one of the executors, duly paid to George Matson, husband of said Betty Matson, the interest of one half of said purchase up to the 25th day of March, A. D. 1817. Betty Matson died the 23d day of December, in the last mentioned year, and letters of administration upon her estate have been duly granted to her late husband, George Matson.

George Matson, as administrator of said Betty Matson, claims interest on the said one half of the before mentioned purchase money, from the 25th day of March, 1817, to the said 23d day of December in the same year, the day of the said Betty's death ; and the said executors refuse to pay the same, alleging that the said administrator is not entitled to the said interest.

The above statement of facts, together with the will of Wm. Walters, deceased, is by consent substituted in lieu of a bill and answer ; and it is agreed that the said case be entered on the docket of the Court of Chancery of New Castle County, as of the present Term, and be submitted to His Honor the Chancellor, for his opinion and decision

touching the said claim of interest.   And it is agreed that the Chancellor may decree between the said parties touching the same matter, as to him shall seem proper.

The case as above stated was signed by the solicitors of the parties respectively.

*Van Dyke*, for the complainant.

*McLane*, for the defendant.

The case was submitted, without argument, to the Chancellor, who afterwards delivered the following opinion :

The administrator of Betty Matson is entitled to the interest which accrued between the 25th of March, 1817, and the 23rd of December, in the same year, the day on which Betty Matson died.   By the words in the will the testator intended possession for his daughter *during her natural life* ; and the words *yearly interest* only fixed the rate at which the annuity should be charged on a moiety of the purchase money arising from the house and lot ordered to be sold.

In the case of *Edwards vs. Lady Warwick*, 2 *P. Wms.* 171, 176, *interest payable half yearly*, was apportioned, where the person entitled to it died in a broken part of the half year.  And so, on the will of Lord Chief Justice Holt.  In 3 *Vin. Ab.* 18, *pl.* 3. : 2 *Eq. Ca. Ab.* 83, *pl.* 4, it is said that interest on money given for life, though payable half yearly, is always computed to the day of the death of the tenant. The case of Lord Holt's will, the Lord Chancellor, in *Ambler* 279, said, must have been by consent ; but there he is speaking of the interest of *money in the funds*, which is never apportioned ; 3 *Bro. Ch. Rep.* 101.  In 2 *Vesey Sr.* 672, *Wilson vs. Harman*, the case of Lord Holt, as to money in the funds, is denied ; but Lord Hardwicke seems to make a difference between dividends on South Sea Annuities and all annuities of that kind, and the interest of money.

See 3 *Atk.* 502, *Sherrard vs. Sherrard*; 3 *Atk.* 261, *Pearly vs. Smith.*

As to the funds, the reason given in 2 *Com. Dig.* 359, *Title Chancery*, (2 *E.*)*Apportionment*, is, because by Act of Parliament the dividends on these annuities are made payable on certain days.

Considering this as a provision made by a father for a daughter, *during her life*, I do not perceive how she could have the full benefit of it, without extending the payment of interest to the last day of her life. He certainly designed to give her the use in the interest of a moiety of the purchase money as long as she lives.

Decree for the payment to complainant, as the administrator of Betty Matson, of interest on one moiety of the purchase money from the 25th day of March, 1817, to the 23rd day of December of the same year, the day of Betty Matson's death.